# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| MARTHA ANN FAIRFIELD ) | Case No. 05-21331-TLM |
| ) | |
| Debtor. ) | MEMORANDUM OF DECISION |
| ) | |
| _____ ) | |

**INTRODUCTION**

On August 31, 2005, Martha Ann Fairfield ("Debtor")[1] filed a voluntary petition for chapter 13 relief commencing this case. Disputes with her former husband, Eric Fairfield ("Fairfield") and with an asserted creditor, Dennis Braulick ("Braulick"), have kept Debtor's chapter 13 plan from being confirmed.

Debtor's objections to claims asserted by Fairfield and Braulick are presently before the Court. *See* Doc. No. 31 (objection to Braulick claim); Doc. No. 32 (objection to Fairfield claim). Both creditors assert secured status. *See* Claims Nos. 7 (Braulick), 8 (Fairfield). Debtor contends that neither creditor is validly secured. And, while Debtor concedes Fairfield has a nonpriority,

---

[1] When she testified before the Court in May, 2006, Ms. Fairfield indicated her surname was "Smith" and, when testifying at the hearing on April 4, 2007, she used "Nistor" as a surname. The Court uses the term "Debtor."

MEMORANDUM OF DECISION - 1

unsecured claim of $6,000.00, she argues that Braulick has not proven a claim.[2]

The objections were heard on April 4, 2007, and taken under advisement. Upon consideration of the evidence presented[3] and the parties' legal arguments, the Court enters the following findings of fact and conclusions of law. Fed. R. Bankr. P. 9014 and 7052 incorporated thereby.

**BACKGROUND AND FACTS**

The issues regarding the secured status of the two claims are narrow and discrete. Still, the evidence on the objections came in fitfully and with a decided lack of clarity. This seems to be the result of the parties' belief that hearing on these objections provides an opportunity, or an excuse, to litigate every claim, charge, allegation, perceived slight and/or unresolved issue between and among them that has arisen over several years of incessant dispute. In this, they are wrong. The issues before the Court are circumscribed by the pleadings, and only the objections to claims will be adjudicated

The evidence establishes the following.

In 2000, Debtor acquired certain real property in rural Bonner County,

---

[2] Debtor listed Braulick on her schedule F (unsecured creditors) as holding a disputed claim of lien and marked that claim as "contingent" and "disputed." *See* Doc. No. 1.

[3] In evaluating the evidence, the Court has considered the credibility of the witnesses, the weight to be given their testimony, and the relevance of their testimony to the issues before the Court.

MEMORANDUM OF DECISION - 2

Idaho, more particularly described in the pleadings.[4]  At some point prior to early 2002, she transferred the title to herself and to her then-minor son, David Utterstrom.  They held the property jointly until March 26, 2002, when Utterstrom executed a quitclaim deed transferring the property to Debtor (as "Martha A. Baker, an unmarried woman"), which deed appears to have been recorded on April 1, 2002.  Ex. A.  Debtor married Fairfield in April, 2002.  Testimony indicates Fairfield did not participate in the acquisition of the property.

While married, Debtor and Fairfield made some improvements to the property.  This included a "loan" of funds by Fairfield in November, 2003, described below, and also labor by the two of them and their various children to clear and clean the property and build fence.  Certain expenses related to this fencing were incurred in the joint names of Debtor and Fairfield at a local feed and supply store.

In this process, Debtor and Fairfield engaged an individual, Gheorghe Marcel Nistor, to build a "pole barn" on the property.  He started in November, 2003, and worked into January, 2004.  During this period, Fairfield paid Nistor from his own funds.  Nistor stopped work when Fairfield advised him that there

---

[4] Debtor listed this property on her schedule A, assigning it a value of $50,000.00.  On that schedule and schedule D (secured claims), she noted $15,368.00 in secured debt on the property, consisting of real property taxes and a $13,493.00 escrowed contract claim held by Harold and Evelyn Benham.  On schedule C, Debtor claimed the equity in the property exempt under Idaho Code § 55-1003.  *See* Doc. No. 1.

MEMORANDUM OF DECISION - 3

was no more money.

In August, 2004, Debtor filed a divorce action against Fairfield. For a reason not made clear in testimony, Debtor did not reside on the property in November, 2004; instead, Fairfield remained on or in control of the property.[5] The pole barn structure was mostly complete at that time; the vertical structures were up, roofing trusses were installed, the front of the building was complete, and the roof was also complete except for a center cap.

In April, 2005, Fairfield was deployed to the Mexico border area for 17 days.[6] While he was gone, he asked Braulick to watch the property in Bonner County, and to make repairs as needed. Fairfield did not instruct Braulick to construct or improve anything on the property. Rather, Braulick was to protect what was there from theft or damage and maintain the status and condition of the property until Fairfield returned.[7] As Fairfield testified, Braulick was simply to "take care of the place" and "if something broke, fix it."

Braulick testified that he performed during this time frame certain "security" work (to keep the property locked and prevent theft) and engaged

---

[5] An exhibit suggests that Fairfield may have been allowed to stay on the property in order to tend to livestock. *See* Ex. 5. Fairfield testified to the presence of livestock in early 2005.

[6] In a prior affidavit, Fairfield indicated he was a Captain in the U.S. Army Reserve. *See* Doc. No. 19; Ex. 16 (copy). Evidence and testimony regarding a second deployment was irrelevant to the issues presented.

[7] Braulick was also to feed livestock on the property and to maintain fences.

MEMORANDUM OF DECISION - 4

others to perform some remedial work (such as an individual to bulldoze roads).[8]

Upon pointed questioning from the Court, Braulick also testified that he performed some manual labor on the pole barn and that he brought materials to the site where they were placed on the ground for future use on that project.[9] However, these activities did not apparently occur during the period of Fairfield's 17 day deployment in April, 2005; Fairfield testified that there was no work on the property while he was gone other than some road grading and some fencing repair.

On May 10, 2005, Braulick filed of record in Bonner County a notice of claim of lien. *See* Claim No. 7 (attachment); *see also* Ex. 17. This claim was signed and acknowledged by Braulick on May 6, 2005, and alleges that on May 6, 2005, at the request of Fairfield, he performed labor or provided materials for use on the property.[10] The claim asserted that the owner or reputed owner of the property was Debtor and Fairfield. Braulick's claim of lien alleges he provided

---

[8] Braulick seemed to indicate that he paid this individual for the work, but the testimony was not clear. How much was paid, when it was paid, and by whom it was paid was never established.

[9] Braulick never expressly testified that he purchased those materials. Among various exhibits that Braulick introduced was an advertisement from a local building supply dealer that reflected a price for a "kit" of materials to build a pole barn. Ex. 11. There was, however, no receipt or other documentary evidence indicating that Braulick had ever made such a purchase. It appears the advertisement was meant to suggest the value of the "job" of building a structure. *See also* discussion *infra*.

[10] When confronted with Debtor's objection and her argument that he could not have commenced work the same day as the lien itself was filed, Braulick argued that the claim of lien contained a "Scribner [*sic*] error" and that he meant to say the work commenced March 26, 2005. *See* Doc. No. 80. The argument is addressed below.

MEMORANDUM OF DECISION - 5

$16,880.00 worth of labor ("26 days labor, security at $300.00 [=] $7500.00") and materials ("Pole Barn supplies/related costs $6000.00; fencing, wire, feed $1580.00; Equipment rental/fuel $1800.00").

As noted, Debtor's bankruptcy case was filed August 31, 2005. Following the bankruptcy, a September, 2005, judgment and decree of divorce was entered, dissolving Debtor and Fairfield's marriage but expressly disclaiming any division of property or adjudication of debts. Ex. 4.[11]

During the chapter 13 proceeding, Debtor sold the Bonner County real property. This followed a hearing in May, 2006, at which Fairfield and Braulick opposed Debtor's proposed sale. *See* Doc. Nos. 56 (minute entry of May 2, 2006); 57 (order approving sale). The property was sold free and clear of liens and interests, and Debtor's homestead exemption, Braulick's asserted lien, and any interest of Fairfield attached to the proceeds subject to later determination. *Id.*

Debtor's February 2006 objections to the Fairfield and Braulick claims were eventually noticed for hearing which brought the issue before the Court for resolution, an essential step before considering confirmation of Debtor's amended

---

[11] A preliminary agreement regarding the resolution of claims between the two of them was discussed, and it was executed on September 14, 2004. Ex. 5. This was not, however, a final agreement, but rather an intermediate attempt to resolve certain issues. No final agreement was reached.

MEMORANDUM OF DECISION - 6

chapter 13 plan, Doc. No. 66.[12]

**DISCUSSION AND DISPOSITION**

A proof of claim is deemed allowed unless a party in interest objects and establishes one of the statutory reasons why it should not be allowed. *See* § 501, § 502. The filing of an objection to claim creates a dispute which is a "contested matter" within the Rules. *See* Fed. R. Bankr. P. 9014. That is what is presented here.

A proof of claim's evidentiary effect under Fed. R. Bankr. P. 3001(f) as to validity and amount is strong enough to carry over a mere formal objection. *See Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) However, once the objector comes forward to show facts tending to defeat the claim by probative force equal to the allegations in the proof of claim itself, or negating one or more requisite factual or legal elements, the burden returns to the creditor to prove the validity of the claim by a preponderance of the evidence. *Id*. Where the proof of claim omits an essential element of the substantive claim, the objector "need only note the absence of any such showing" and need not offer evidence in support. *Atwood v. Chase Manhattan Mortgage Co., (In re Atwood)*, 293 B.R. 227, 233 (9th Cir. BAP 2003). The claimant must then prove the

---

[12] The plan proposes modest monthly payments, but also notes that Trustee holds the proceeds of the sale of property, which may be used to fund the plan once the validity and amount of claims are determined. The plan does not treat either Braulick or Fairfield as a secured creditor.

MEMORANDUM OF DECISION - 7

validity of the claim by a preponderance of the evidence, and the ultimate burden of persuasion remains at all times on the claimant. *Lundell*, 223 F.3d at 1039 (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)).[13]

As noted by the Court at the April 4 hearing, and reaffirmed here, Debtor met the initial burden of pointing out the absence of essential elements of the alleged secured claims, and the burden thus shifted back to Fairfield and Braulick to prove by a preponderance of the evidence the validity of their claims.

### A.     Fairfield's claim

Fairfield asserts a $20,000.00 secured claim. *See* Claim No. 8. Debtor concedes Fairfield has a claim of $6,000.00 based on funds he lent to Debtor to assist her in developing or improving her Bonner County real property during the time she and Fairfield were married.[14] But, persuasively, she argues that Fairfield failed to show any part of that claim is secured. Fairfield provided limited, sketchy evidence and has never explained cogently why his claim against Debtor should be entitled to treatment as a secured claim.[15]

---

[13] *See also In re Kaskel*, 269 B.R. 709, 713, 01.4 I.B.C.R. 139, 140-41 (Bankr. D. Idaho 2001); *In re Blackstone*, 269 B.R. 699, 703, 01.4 I.B.C.R. 135, 136 (Bankr. D. Idaho 2001).

[14] There was no specification of precisely what was purchased. However, it appears the funds were used to buy materials for fencing and general improvement of the property, and that some portion was used to pay for Nistor's labor and the materials for the initial construction of the pole barn that occurred in late 2003 and early 2004.

[15] The Court appreciates that Fairfield represents himself, and it has construed generously his submissions and arguments. Nevertheless, even pro se litigants are responsible for
(continued...)

MEMORANDUM OF DECISION - 8

Though the affirmative evidence does not precisely establish an amount by which Fairfield enhanced Debtor's real property or the amounts that he otherwise lent or provided to her, Debtor concedes a debt of $6,000.00. Fairfield did not prove a higher amount. The Court therefore finds that Fairfield has a claim in the amount of $6,000.00 and further finds and concludes that such claim is a nonpriority, unsecured claim.[16]

### B.    Braulick's claim

Braulick asserts a $16,880.00 secured claim, *see* Claim No. 7, which is predicated on a statutory materialmen's lien.[17] Debtor objects to the adequacy of the lien under the Idaho Code and case law. Debtor also objects to Braulick holding any cognizable and provable claim. This puts Braulick to the challenge of showing not just the existence of a valid statutory lien against Debtor's real property but also the enforceable amount of that lien. In addition, should Braulick not have a lien claim against the property, he must show some direct claim against

---

[15](...continued)
presenting their own cases, and it is not the Court's job to make Fairfield's case for him. Fairfield was given ample time to prepare. This included a significant period before a hearing that was set in January, 2007, and another significant period between the vacation of the January hearing and the commencement of the rescheduled hearing on April 4.

[16] Given the context of the matter presented for decision, the Court rules here only on the secured claim asserted by Fairfield against the real property in Bonner County, and on no other aspect of the marriage or the parties' relationship.

[17] Much of Braulick's written and oral submissions appear designed to support a possible claim by Fairfield. These submissions and arguments are not considered; Braulick is not an attorney and cannot "represent" or advocate for Fairfield.

MEMORANDUM OF DECISION - 9

Debtor personally.

### 1. Requirements for a valid materialmen's lien

Under Idaho Code § 45-501, *et seq.*, a person providing labor or materials in the construction of improvements on real property has a lien on such property for the value thereof. However, since such liens "are creatures of statute, [the] statutory requirements must be substantially complied with in order to perfect a valid lien." *See Bell v. Smith (In re Smith)*, 232 B.R. 461, 466, 98.4 I.B.C.R. 119, 121 (Bankr. D. Idaho 1998) (quoting *Baker v. Boren*, 934 P.2d 951, 961 (Idaho Ct. App. 1997)); *see also L & W Supply Corp. v. Chartrand Family Trust*, 40 P.3d 96, 101 (Idaho 2002).

The lien laws are remedial in nature and designed to protect those laborers and materialmen who have added directly to the value of property of another by their materials or labors. *Baker*, 934 P.2d at 961. But the Idaho courts are clear that the laws should not be construed to provide liens to persons who do not come within the terms of the statute, and lien claimants must therefore show that they have performed lienable labor and that they have substantially complied with the statutory requirements to perfect their legitimate claim. *Boone v. P & B Logging Co.*, 397 P.2d 31, 33 (Idaho 1964).

The statutory elements are quickly summarized. To perfect the lien, Idaho Code § 45-507(2) requires the lienor to file a claim of lien within 90 days of the

MEMORANDUM OF DECISION - 10

last day labor was provided or material supplied. Under Idaho Code § 45-507(3), the lien must contain (a) a statement of the lienor's demand "after deducting all just credits and offsets," (b) the name of the owner or reputed owner of the property, (c) the name of the person by whom the lienor was employed or to whom he furnished the materials, and (d) a description of the real property to be charged sufficient for its identification. The claim must be verified by the oath of the claimant as just. Idaho Code § 45-507(4). The claimant must no later than five days after the lien is filed serve the same on the owner or reputed owner of the property either by personal delivery or by certified mail. Idaho Code § 45-507(5). A suit to foreclose the lien must be commenced within six months of the filing date. Idaho Code § 45-510.[18]

### a. Timing

The claim of lien must be filed of record within 90 days after the completion of labor or last furnishing of materials. Idaho Code § 45-507(2). "[T]he time for filing a lien starts to run when the claimant performs his last substantial work or makes his last substantial delivery of material." *Hopkins v. Merlins Insulation, Inc. (In re Larsen)*, 06.3 I.B.C.R. 61, 63 (Bankr. D. Idaho 2006) (quoting *Barlow's, Inc. v. Bannock Cleaning Corp.*, 647 P.2d 766, 769

---

[18] Debtor's bankruptcy petition was filed within the 6 month period for suit on the May 10, 2005 lien. Because the lien is otherwise fatally flawed, the Court need not consider any arguments regarding the tolling of this requirement.

MEMORANDUM OF DECISION - 11

(Idaho Ct. App. 1982)).[19]

### 1. Materials

Braulick appeared to testify that a "pole barn package" was delivered to the property in April, 2005. However, that testimony is uncorroborated, and not supported by any documentary evidence. It is further inconsistent with Fairfield's testimony. Fairfield did not describe any provision of material by Braulick; instead, he indicated only road grading and fencing work was performed while he was deployed that spring. It is also inconsistent with Nistor's testimony about the substantial completion of the pole barn structure in early 2004.

It may be that some other miscellaneous building materials (screws, nails, etc.) or fencing materials were delivered between March 26, 2005 (Braulick's suggested date of his employment by Fairfield) and the May 6, 2005 date of the preparation of the lien. But it was not shown that, if delivered, any such materials were "substantial" in the sense of Idaho law, or effective to extend the 90 day period for filing a claim of lien related to any prior involvement of Braulick in the provision of materials for the pole barn structure.

### 2. Labor

The Idaho statute provides a lien only for a "person performing labor upon,

---

[19] The provision of unsubstantial or inconsequential labor or materials is not sufficient to toll the operation of the statute and extend the 90 day period for filing the claim of lien of record. *Barlow's Inc.*, 647 P.2d at 769.

MEMORANDUM OF DECISION - 12

or furnishing materials to be used in, the construction, alteration or repair of any . . . building . . . or any other structure" or who performs labor in regard to the improvements made to real property. Idaho Code § 45-501. The statutory lien is only for "the work or labor done or professional services or materials furnished." *Id.*[20]

As earlier noted, Braulick testified that he personally performed some labor in March or April, 2005. It appears this consisted of "security" work by Braulick in visiting the property while Fairfield was deployed, and perhaps some fence or gate repair. Neither of these items constitute substantial work or improvements on the property sufficient to extend the time for filing a claim of lien for the pole barn's construction.[21]

Braulick's testimony might be viewed as suggesting some manual labor was performed by him on the pole barn structure itself, in an attempt of Fairfield and Braulick to complete it. However, just when this occurred is not clear. It could have been, for example, in 2004 after Nistor left the job. Braulick did not establish

---

[20] A lien claimant must be able to separate and distinguish lienable items of labor from non-lienable items. *Boone*, 397 P.2d at 33. If Braulick can do so, it certainly was not evident from the evidence presented, or from the claim of lien as recorded.

[21] The Court's focus has been on whether labor within 90 days of the May 10, 2005 recording date supports the lien *as claimed* by Braulick, to wit, for the full alleged cost of the pole barn. It could be argued that a labor lien properly lies for just the fence repair work. But Braulick did not prove up that lien. Nor did he establish that a lien would properly lie under Idaho law for the "security" allegedly provided or, if it could, what the amount of such a lien would be.

MEMORANDUM OF DECISION - 13

that he performed any work on the structure within 90 days of the May 10, 2005 recording of lien or that, if he did, it was substantial and thus rendered the lien timely.

The timing element of the statute therefore is not met, as there was inadequate showing that substantial labor was performed or substantial materials provided within 90 days preceding May 10, 2005.[22]

### b. Certification

The claim of lien must be "verified by the oath of the claimant . . . to the effect that [he] believes the same to be just." Idaho Code § 45-507(4). *See also Commercial Elec., Inc. V. JGC Enters., LLC (In re JGC Enters., LLC)*, No. 00-36002, 2002 WL 1378883 (9th Cir. June 24, 2002); *Cornerstone Builders, Inc. v. McReynolds*, 41 P.3d 271, 274 (Idaho Ct. App. 2001); *Treasure Valley Plumbing & Heating, Inc. v. Earth Res. Co.*, 684 P.2d 322, 324 (Idaho Ct. App. 1984).

---

[22] The claim of lien asserts that Braulick "commenced" providing labor and materials on May 6, 2005 at Fairfield's request, and also asserts that the provision of labor and materials "ceased" on the very same date. Braulick's assertion that this defect (and others) in his claim of lien can be corrected through application of the doctrine of scrivener's error is unavailing. That doctrine allows a court, on competent proof, to reform a document where a third person (the scrivener) is retained by parties to document their transaction and makes a mistake or error in doing so, which then constitutes a "mutual mistake" of those parties. *See generally* 66 Am.Jur.2d Reformation of Instruments § 19. It is a part of the concept and principle of "reformation" of a contract to ensure that the same accurately reflects the intention of the parties executing it, eliminating their "mutual" mistakes in documentation of their intent. *See Hughes v. Fisher*, 129 P.3d 1223 (Idaho 2006); *Uptick Corp. v. Ahlin*, 647 P.2d 1236 (Idaho 1982). Here, the only party to the claim of lien was Braulick. Neither scrivener's error specifically nor reformation generally will allow him to revise the claim after the fact to remedy his own error and render his lien statutorily compliant. Nevertheless, the Court has considered and addressed in this Decision the evidence related to Braulick's alleged labor and provision of materials.

MEMORANDUM OF DECISION - 14

There is here both an acknowledgment on the second page of the claim of lien (*i.e.*, showing that Debtor was identified as the party signing the claim of lien), and on its first page a notarized certification by Braulick to the effect that he believes the contents of his claim are just. This satisfies the certification under oath requirement of § 45-407(4).[23]

### c.    Contract and amount

The claim of lien must set forth the identity of the person who requested the lienor to perform labor or provide materials. *See* Idaho Code § 45-507(3)(c) (requiring the lien to set forth the name of the person the lienor was "employed by" or to whom he furnished materials). Though Braulick identified Fairfield as that individual, the testimony did not show that Fairfield authorized or requested Braulick to provide either the type or amount of labor or materials reflected in the claim of lien. Rather, the extent of Fairfield's testimony was that he asked Braulick to "look after" the property and to "fix" what might need to be repaired. Braulick's claim of lien as filed, for $16,880.00 for the services and materials allegedly provided, is based on an asserted agreement with Fairfield that was never proven. To the extent Fairfield could engage Braulick to perform lienable labor or provide materials on Debtor's property, under the evidence Fairfield did so only to

---

[23] While Braulick satisfies the requirement of attesting to and certifying *his* belief the claim is "just," he is also required under the present claim objection to prove the validity and amount of the lien by competent evidence. He failed to do so.

MEMORANDUM OF DECISION - 15

authorize Braulick to take care of the property during the period of time Fairfield was deployed in April, 2005.

A limited amount of labor (*e.g.*, fence repair, gate repair) and perhaps some incidental materials were provided during the 90 days prior to Braulick's filing the May 10, 2005 lien. Braulick's claim for his labor, including his "security" services, indicates a rate of $300.00 per day, allegedly over 26 days.[24] He did not prove that this rate was within any agreement or even within the contemplation of Fairfield in asking him to "look after" the property. Nor did Braulick establish the reasonableness of this rate in the abstract.

Braulick's lien claim also includes, apparently, a labor component related to the pole barn construction project on a "flat rate" basis.[25] However, there was no evidence that Braulick was engaged to perform that work, on a flat rate basis or

---

[24] The 26 day figure is a mystery. The period between March 26, 2005 (the date Braulick in his pleadings and arguments says he intended to use or should have inserted as a "contract" date with Fairfield) and May 10, 2005 (the date of the filing of the claim of lien) is 45 days. Fairfield was deployed only 17 days by his testimony, the period when Braulick claims to have provided "security" and maintenance services. A portion of Ex. 10 suggests that the 26 days runs "from" March 26, 2005 (*i.e.*, apparently to about April 21).

[25] In Doc. No. 80 (an objection to confirmation, coupled with both a motion, and including a disclosure of witnesses and exhibits for the claim objection hearing), Braulick states: "The 'Pole Barn supplies/related costs' 6000.00 is timely this is for repair and replacement of material, at a **flat rate** to construct scaffolding, generator use scaffolding usage, etc. to the existing damaged structure and is the amount that would have been charged for repairs even if it took longer or less time." *Id.* at 2 (*sic*). An advertisement from an area building supply store, Ex. 11, was also admitted into evidence. However that exhibit was not only dated in September, 2005, well after the events in question, but there was no testimony establishing the exhibit's relevance or linking it to any materials actually acquired in relation with the pole barn on Debtor's property.

MEMORANDUM OF DECISION - 16

any other basis,[26] nor was there evidence that he in fact performed such work. In the end, though Braulick apparently performed some manual labor with Fairfield before Fairfield was deployed, and watched the property during that deployment, the evidence lacks any indication of either an agreed amount to be paid or a reasonable value for that work.[27]

### d. Service of the lien

The claim of lien must be served by the claimant on the owner or reputed owner of the property by personal delivery or certified mail no later than five days after the lien is filed of record. There was no evidence whatsoever presented to establish that this requirement of the statute was met.

The several defects noted herein prohibit the Court from giving effect to the lien. Braulick has failed to prove that he substantially complied with the statutory requirements. Therefore, Debtor's objection to Braulick's claim as secured under the materialmen's lien statute is well taken and will be sustained. In addition, Debtor's objection will be sustained in its contest of any claim by Braulick, as he

---

[26] In response to cross examination, Fairfield denied authorizing any such contracts, rates, terms, or fees. Debtor's counsel walked Fairfield through the specifics of the claim of lien and, as to each, Fairfield testified that he did not "authorize" Braulick to perform the work or acquire the materials as there alleged. This appears inconsistent with a "bill for work" contained as part of Ex. 10 which seems to bear Fairfield's signature and a May 3, 2005 date. However, Fairfield's testimony was clear, and Exhibit 10 was not cogently explained or supported by testimony.

[27] Braulick's materialmen's lien claims other materials (fencing, wire, feed), equipment rental and fuel were provided. However, there was no proof that Braulick acquired such goods and provided them to Fairfield or to the property.

MEMORANDUM OF DECISION - 17

failed to establish any amount due from Debtor as an unsecured claim.[28]

**CONCLUSION**

Debtor's objection to Braulick's claim will be sustained and the claim disallowed. Debtor's objection to the secured status of Fairfield's claim will be sustained. Fairfield's claim will be allowed in the amount of $6,000.00 as a nonpriority, unsecured claim.

Debtor shall provide proposed orders in accord herewith.

DATED: April 20, 2007

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[28] The lien statute provides a way for a laborer to make a claim against an owner's property (here Debtor's) even if his contract is with a contractor or other party (here allegedly Fairfield) if improvements are made to the real property and if the several statutory prerequisites are met. Braulick's failure of evidence eliminates any enforceable claim against Debtor's property. He proved no contract or other cognizable claim against Debtor directly, and thus has no claim against Debtor personally or her bankruptcy estate. Whether he has a claim against Fairfield, as the party who allegedly engaged him to provide labor and security services, is not a matter with which the Court need concern itself.

MEMORANDUM OF DECISION - 18

## CERTIFICATE OF SERVICE

     A "notice of entry" of this Decision, Order and/or Judgment has been served on Registered Participants as reflected by the Notice of Electronic Filing. A copy of the Decision, Order and/or Judgment has also been provided to non-registered participants by first class mail addressed to:

Dennis W. Braulick
917 E 12th Ave
Post Falls, ID 83854

Eric M. Fairfield
PO Box 2373
Hayden, ID 83835

Case No. 05-21331-TLM

Dated: April 20, 2007

     /s/
Suzanne Hickok
Law Clerk to Chief Judge Myers